IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

THE UNITED STATES OF AMERICA, *
ON BEHALF OF AND FOR THE USE OF
INTERSTATE ELECTRICAL SUPPLY, *
INC.,
                                 *

    Plaintiff,
                                 *

vs.                                         CASE NO. 4:12-CV-210 (CDL)
                                 *

ANDERSON ELECTRIC COMPANY,
INC., CHARLES ANDERSON, *
LIFECYCLE CONSTRUCTION
SERVICES, LLC and FIDELITY AND *
DEPOSIT COMPANY OF MARYLAND,
                                 *

    Defendants.
                                 *
_____

O R D E R

As a subcontractor on the federal construction project for

the Wilson Elementary School Gymnasium at Ft. Benning, Georgia,

Plaintiff Interstate Electrical Supply, Inc. ("Interstate") sold

supplies to Defendant Anderson Electric Company, Inc. ("Anderson

Electric"), a subcontractor on the project.  When Anderson

Electric failed to pay for the supplies, Interstate notified the

primary contractor for the project, Lifecycle Construction

Services, LLC ("Lifecycle"), and its surety, Fidelity and

Deposit Company of Maryland ("Fidelity"), of its claim for

payment.  Unsuccessful in its attempt to obtain payment,

Interstate filed the present action.  Interstate seeks to

enforce the payment bond executed by Defendants Lifecycle and

Fidelity in accordance with the Miller Act, 40 U.S.C. §§ 3131-
34.   Interstate also asserts a separate breach of contract claim
against Lifecycle.   Defendants Lifecycle and Fidelity move for
summary judgment on Interstate's Miller Act claim only.   They
argue that no claim exists under the Miller Act for supplies
that were provided after notice of the claim was given and that
notice to Fidelity, as the surety, does not operate as notice to
Lifecycle for purposes of a Miller Act claim.   As discussed
below, the Court finds that genuine factual disputes exist as to
whether Interstate provided adequate notice pursuant to the
Miller Act as required by 40 U.S.C. § 3133(b)(2).   Therefore,
Defendants' motion for summary judgment on Interstate's Miller
Act claim (ECF No. 22) is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."   Fed. R.
Civ. P. 56(a).   In determining whether a *genuine* dispute of
*material* fact exists to defeat a motion for summary judgment,
the evidence is viewed in the light most favorable to the party
opposing summary judgment, drawing all justifiable inferences in
the opposing party's favor.   *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 255 (1986).   A fact is *material* if it is relevant
or necessary to the outcome of the suit.   *Id.* at 248.   A factual

dispute is *genuine* if the evidence would allow a reasonable jury

to return a verdict for the nonmoving party.  *Id.*

                          FACTUAL BACKGROUND

     Viewed  in  the  light  most  favorable  to  Interstate,  the

record reveals the following.

     Lifecycle,  as  principal  contractor  on  a  federal  government

construction  project  known  as  the  Wilson  Gym,  executed  the

required  Miller  Act  payment  bond  with  Fidelity  as  its  surety.

Lifecycle  subcontracted  with  Anderson  Electric  for  part  of  the

work  on  the  project.   Anderson  Electric  bought  some  of  the

materials  for  its  work  from  Interstate.   After  supplying  the

materials,  Interstate  claims  that  it  has  not  been  paid.   On

August 22, 2011, Interstate sent Lifecycle the following email:

> At  this  time,  Anderson  Electric  owes  Interstate
> Electrical  Supply,  Inc.  .  .  .  $50,591.58  for  the
> Wilson  Gym  job.   This  is  only  for  invoices  that  have
> been  billed  as  of  August  19,  2011[;]  this  does  not
> include  invoices  not  billed.   The  contract  number  for
> Wilson  job  is  W912HN-10-D-0033-0002  .  .  .  .  Because
> these  invoices  are  over  90  days  past  due,  and  Anderson
> Electric  has  informed  us  they  cannot  afford  to  pay
> Interstate  Electrical  Supply,  Inc.,  we  are  looking  for
> the  bonding  company  information  in  hopes  we  can  get
> payment  due  on  this  account.   Any  help  you  may  offer
> would be greatly appreciated.

Mem.  in  Supp.  of  Defs.'  Mot.  for  Summ.  J.  Ex.  A,  Email

Correspondence  between  L.  Burditt  and  T.  Crowder  (Aug.  22,

2011),  ECF  No.  23-1  at  3.  Lifecycle  responded  and  asked

Interstate  to  send  all  invoices  and  signed  delivery  tickets  so

                                3

that it could "investigate and resolve the issue."   *Id.*
Interstate mailed Lifecycle a package containing the invoices
for materials supplied as of August 24, 2011.   Pl.'s Resp. to
Defs.' Mot. for Summ. J. [hereinafter Pl.'s Resp.] Ex. B,
Tinkler Aff. ¶ 4, ECF No. 26-2 at 7; Tinkler Aff. Ex. A,
Anderson Electric Statement of Account (Aug. 24, 2011), ECF No.
26-2 at 9-22.   Lisa Burditt from Interstate states that when she
informed Ty Crowder from Lifecycle over the phone that
Interstate intended to stop supplying materials for the projects
because of Anderson Electric's unpaid invoices, Crowder told her
that Lifecycle would pay for the materials if Interstate would
continue supplying them until the jobs were finished.   Pl.'s
Resp. Ex. D, Burditt Dep. 28:19-33:25, ECF No. 26-2 at 76-83.
Interstate continued to supply the materials.   *See* Tinkler Aff.
¶ 5 & Ex. C, Anderson Electric Statement of Account (Oct. 20,
2011), ECF No. 26-2 at 7, 42-44 (listing charges labelled
"WILSON GYM" or "WILSON" up until October 11, 2011).

On September 23, 2011, Burditt sent a letter directly to
Lifecycle's surety, Fidelity, stating that Interstate is seeking
payment through Lifecycle's bond because Anderson Electric and
Lifecycle have failed to pay for "$300,000+" in materials
supplied for two federal projects including the Wilson Gym,
"Contract No: W912HN-10-D-0033-0002."   Tinkler Aff. Ex. C,
Letter from L. Burditt to T. Haley (Sept. 23, 2011), ECF No. 26-

2 at 27.   Burditt followed up with Fidelity on October 4, 2011 specifying that Interstate is owed and is seeking "$50,000+ for the Wilson Gym job" in particular.   Tinkler Aff. Ex. C, Letter from L. Burditt to N. Kokinakis (Oct. 4, 2011), ECF No. 26-2 at 28.   On October 10, 2011, Nicholas Kokinakis of Fidelity acknowledged receipt of Interstate's Notice of Claim for $300,000.00.   Tinkler Aff. Ex. C, Letter from N. Kokinakis to L. Burditt (Oct. 10, 2011), ECF No. 26-2 at 66-68.   That same day, Kokinakis also sent a letter to Lifecycle discussing Interstate's claims against Lifecycle's payment bond totaling $300,000.00.   Pl.'s Resp. Ex. C, Letter from N. Kokinakis to S. Colbert (Oct. 10, 2011), ECF No. 26-2 at 73-74.   On October 14, 2011, Lifecycle sent Anderson Electric a letter about Anderson Electric's failure to pay "more than $300,000 for work or materials" to suppliers including Interstate on the two projects including the Wilson Gym.   Pl.'s Resp. Ex. C, Letter from M. Wise to C. Anderson (Oct. 14, 2011), ECF No. 26-2 at 75.   On December 8, 2011, Interstate signed a form claiming $289,175.43 under the payment bond for the material supplied to Anderson Electric up until October 11, 2011 for the two projects. Tinkler Aff. Ex. C, Fidelity Proof of Claim, ECF No. 26-2 at 69. Interstate filed suit on August 21, 2012 to recover $51,319.62 plus prejudgment interest, services charges, and attorneys' fees

against Lifecycle's payment bond for materials provided for the Wilson Gym project.   Compl. ¶¶ 6-17, ECF No. 1.

DISCUSSION

Under the Miller Act, a general contractor must furnish a payment bond to the United States for certain federal construction projects.   40 U.S.C. § 3131.   If a subcontractor fails to pay a supplier of materials on such a project, that supplier can sue on the bond by giving written notice to the general contractor within ninety days of last supplying the material for which the claim is made.   40 U.S.C. § 3133(b)(2); *United States* ex rel. *Kinlau Sheet Metal Works, Inc. v. Great Am. Ins. Co.*, 537 F.2d 222, 223 (5th Cir. 1976).[1]   Defendants contend that Interstate did not provide proper notice for materials supplied after August 19, 2011 and that Interstate's Miller Act claim for materials supplied after that date fails as a matter of law.[2]   Interstate responds that a genuine factual dispute exists as to whether proper notice was given for claims arising from supplies provided after August 19, 2011 and that summary judgment is therefore inappropriate.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[2] In their reply brief, Defendants abandoned their argument against Interstate's entire Miller Act claim for failing to meet the statutory filing requirement and now concede that suit was timely filed.  Defs.' Reply on Mot. for Summ. J. 1-2, ECF No. 29.

The issue presented by Defendants' summary judgment motion is whether Interstate has pointed to sufficient facts from which a reasonable jury could conclude that Lifecycle was on notice of Interstate's claims arising from supplies provided to Anderson Electric after August 19, 2011.  To resolve this issue, it is important to understand the purpose of the Miller Act notice requirements.  "The purpose of the notice requirement of the Miller Act is to alert a general contractor that payment will be expected directly from him, rather than from the subcontractor with whom the materialman dealt directly."  *United States* ex rel. *Jinks Lumber Co. v. Fed. Ins. Co.*, 452 F.2d 485, 487 (5th Cir. 1971).  In order to effectuate the Miller Act's purpose of providing a meaningful remedy to laborers and suppliers, courts have traditionally allowed reasonable flexibility regarding the method by which such notice is given. *Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1437 (11th Cir. 1996); *Houston Fire & Cas. Ins. Co. v. United States* ex rel. *Trane Co.*, 217 F.2d 727, 729-30 (5th Cir. 1954).  But as has also been recognized, the notice requirement serves the purpose of protecting the general contractor from being held liable for remote debts of its subcontractor that the contractor was not made aware of within the ninety-day deadline. *Jinks*, 452 F.2d at 487.  Therefore, while flexibility may be permitted as to how the notice is given, the contents of that notice must be

sufficiently specific to place the contractor on notice of the claim asserted: "'[i]t is crucial that the notice state a claim directly against the general contractor, that the claim be stated with some specificity of amount due, and that the claim specify the subcontractor allegedly in arrears.'"  *Maccaferri*, 91 F.3d at 1437 (quoting *Jinks*, 452 F.2d at 488).  That notice does not, however, have to be entirely in writing for it to comply with the Miller Act.  Written notice may be considered in conjunction with oral statements to determine whether the general contractor was adequately informed, "'expressly or impliedly, that the supplier is looking to the general contractor for payment so that 'it plainly appears that the nature and state of the indebtedness was brought home to the general contractor.''"  *Id.* (quoting *Kinlau*, 537 F.2d at 223 (quoting *Houston*, 217 F.2d at 730); *see also Liles Constr. Co. v. United States* ex rel. *Stabler Paint Mfg. Co.*, 415 F.2d 889, 891 (5th Cir. 1969) (finding adequate notice by considering two letters together and finding that overestimated amount of $12,710.61 in letters was substantially accurate notice for actual amount of $10,288.05 ultimately claimed).

Here, Interstate directly informed Lifecycle in an email that Anderson Electric owed Interstate "$50,591.58 for the Wilson Gym job," cautioning that this amount only reflected invoices billed as of August 19, 2011.  Email Correspondence

8

between L. Burditt and T. Crowder (Aug. 22, 2011).  It also
clearly stated that Interstate is looking for payment through
the bonding company.  *Id.*  Interstate followed up as requested
by directly mailing invoices to Lifecycle which covered
materials supplied as of August 24, 2011.  Tinkler Aff. ¶ 4 &
Ex. A, Anderson Electric Statement of Account (Aug. 24, 2011).
A reasonable jury could find that these actions sufficiently
gave notice to Lifecycle that Interstate was seeking payment of
an amount slightly more than $50,591.58 directly from Lifecycle
for all unpaid invoices through August 24, 2011.  The remaining
dispute regarding notice is whether Interstate's conduct prior
to August 24, 2011 combined with conduct after that date placed
Defendants on proper notice for claims that arose after August
24, 2011.

In the Eleventh Circuit, notice is generally not effective
if given before the materials are supplied.  *Nat'l Union Indem.
Co. v. R.O. Davis, Inc.*, 393 F.2d 897, 900 (5th Cir. 1968),
*cited with approval in Kinlau*, 537 F.2d at 224.  Interstate
argues that the general principle cited in these cases should
not apply to a situation in which most of the supplies have been
provided prior to the notice, it is clearly communicated that
the notice is intended to cover future invoices for the same
project, and the contractor induces the subcontractor to
continue supplying materials.  The Court finds this argument

persuasive.  Moreover, there is evidence supporting Interstate's argument that Defendants had notice of Interstate's entire claim.  Interstate's September 23, 2011 letter to Lifecycle's surety specified a $300,000+ figure owed by Anderson Electric for two projects.  Letter from L. Burditt to T. Haley (Sept. 23, 2011).  Interstate's October 4, 2011 letter to Lifecycle's surety clarified that $50,000+ related to the Wilson Gym in particular.  Letter from L. Burditt to N. Kokinakis (Oct. 4, 2011).  Lifecycle's surety then notified Lifecycle on October 10, 2011 of Interstate's $300,000 claim against Lifecycle's bond for Anderson Electric's debts relating to both projects.  Letter from N. Kokinakis to S. Colbert (Oct. 10, 2011).  Four days later, Lifecycle sent a letter to Anderson Electric citing the figure "more than $300,000" when asking about Anderson Electric's unpaid debts to suppliers.  Letter from M. Wise to C. Anderson (Oct. 14, 2011) (listing Interstate specifically, among other suppliers).  From this evidence a reasonable jury could conclude that Lifecycle had received notice at least by October 14, 2011 that Interstate was seeking payment from Lifecycle for the rest of the materials supplied to complete the job.

The Court does not decide today that notice to a contractor's surety constitutes notice to the contractor as a matter of law under the Miller Act, an issue that apparently has

not been decided in this Circuit.[3]  The Court does find, however, that communication between the subcontractor claimant, the contractor's surety, and the general contractor can be considered by the jury in its determination of whether the general contractor received sufficient notice "that the supplier is looking to the general contractor for payment" of some specific amount of a specific subcontractor's indebtedness. *Maccaferri*, 91 F.3d at 1437.

The present record simply does not support Defendants' argument that notice was deficient as a matter of law.  A genuine factual dispute exists on this issue.  Accordingly, Defendants' motion for summary judgment must be denied.

CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 22) is denied.

IT IS SO ORDERED, this 7th day of March, 2014.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[3] Defendants cite two district court cases outside the Eleventh Circuit.  One finds disputed issues of material fact as to whether the contractor received timely notice, stating that service to the surety does not effect service to the general contractor as a matter of law. *Pittsburgh Builders Supply Co. v. Westmoreland Constr. Co.*, 702 F. Supp. 106, 109 (W.D. Pa. 1989).  The other finds that the claimant satisfied its burden to survive summary judgment by pointing to evidence that it sent notice to the surety since the contractor was in bankruptcy.  *United States* ex rel. *EPC Corp. v. Travelers Cas. & Sur. Co. of Am.*, 423 F. Supp. 2d 1016, 1022-23 (D. Ariz. 2006).

11